Christopher M. Burke (CA Bar No. 214799)
Walter W. Noss (CA Bar No. 277580)
Yifan (Kate) Lv (CA Bar No. 302704)
**KOREIN TILLERY P.C.**
401 West A Street, Suite 1430
San Diego, CA 92101
Telephone: (619) 625-5620
cburke@koreintillery.com
wnoss@koreintillery.com
klv@koreintillery.com

*Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHEL PONTIUS, individually and on behalf of all others similarly situated, | Case No.: __'24 CV 1953 MMA BLM__ |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND OF JURY TRIAL** |
| TRI-CITY HEALTHCARE DISTRICT, d/b/a TRI-CITY MEDICAL CENTER, | |
| Defendant. | |

Plaintiff Rachel Pontius ("Plaintiff"), brings this Class Action Complaint against Defendant Tri-City Healthcare District, doing business as Tri-City Medical Center ("Defendant" or "Tri-City"), individually and on behalf of all others similarly situated, and allege, upon personal knowledge as to her own actions and her counsel's investigations, and upon information and belief as to all other matters, as follows:

## INTRODUCTION

1.     Plaintiff brings this class action complaint against Defendant for its failure to properly secure and safeguard the personally identifiable information ("PII") and protected health information ("PHI") (together "Private Information") of Plaintiff and other similarly situated customers of Defendant ("Class Members") in cyberattack that Defendant discovered on November 9, 2023 (the "Data Breach").[1]

2.     According to Tri-City, it discovered malicious activity on its information systems on November 9, 2023, because the malicious activity caused disruptions to Tri-City's IT systems.[2]

3.     After investigating, Defendant discovered that the malicious actors had obtained the PII and PHI of Plaintiff and the proposed Class Members at least the day before the malicious actors caused disruptions that ultimately alerted Tri-City to their presence in its systems.[3]

4.     Notwithstanding that Tri-City claims to have hired "experts" to review the stolen data for PII and PHI, the investigation took an astounding 10 months.  Tri-City notes that the Data Breach was discovered on November 9, 2023, but that Tri-City did not learn that the Data Breach affected Plaintiff's and

---

[1]     *See* Plaintiff's Notice of Data Breach from Defendant attached hereto as **Exhibit A**.

[2]     *Id.*

[3]     *Id.*

CLASS ACTION COMPLAINT – Case No. _____

the proposed Class Members' Private Information until September 27, 2024.[4] This egregious delay exacerbated Plaintiff's and the proposed Class Members' injuries and flies in the face of Tri-City's obligation under California law to notify affected individuals in the most expedient time possible and without unreasonable delay. Cal. Civ. Code § 1798.82(a).

5.    As is evidenced by the fact that Tri-City did not even notice the malicious activity on its network until the malicious actors caused service disruptions, Tri-City did not have the logging, monitoring, and alerting capabilities required of any reasonable cybersecurity program and as is required under Tri-City statutory and regulatory requirements.

6.    If Tri-City had these measures in place, it would have been able to stop the attack before Plaintiff's and the proposed Class Members' Private Information was stolen. Indeed, for cybercriminals to steal Plaintiff's and the proposed Class Members' Private Information, they would have had to infiltrate Defendant's information systems, perform reconnaissance operations to locate the segment of Defendant's information systems whether the valuable Private Information was stored, perform additional operations to gain access to that location, and then someone export that information off Defendant's information systems. Alarmingly, the hackers were able to perform all these tasks without Defendant ever noticing, which presents an alarming picture of Defendant's cybersecurity program and ability to identify malicious activity.

7.    According to reports, Defendant has notified 108,149 that they were affected by the Data Breach.[5]

---

[4]    *Id.*

[5]    Naomi Diaz, *California Hospital Notifies 108,149 Patients of Data Breach*, BECKER'S HEALTH IT (Oct. 14, 2024), https://www.beckershospitalreview.com/cybersecurity/california-hospital-notifies-108-149-patients-of-2023-data-breach.html.

CLASS ACTION COMPLAINT – Case No. _____

8.　　The Data Breach included Plaintiff's and the proposed Class Members' PII and PHI, including some of the most private and damaging information—names, Social Security numbers, addresses, dates of birth, medical treatment and diagnosis information, dates of service, health insurance provider names, health insurance claim information, and/or treatment costs.[6]

9.　　Based on the egregiously slow response and inability to provide timely notice to affected individuals, Tri-City appears to have lacked sufficient cybersecurity incident response, disaster recovery, and/or business continuity plans—or they least failed to test these plans using industry standard and expected tabletop exercises.

10.　　For example, the Data Breach was a double-extortion event— wherein the hackers both stole data for misuse and performed a ransomware operation against the target to take its systems offline until they pay for the ransomware encryption decode key.  Indeed, double-extortion ransomware attacks are the norm for ransomware gangs.

11.　　New reports from the time of the cyberattack show that Tri-City was hit with ransomware on November 9, 2023, and that Tri-City was not prepared for it.  Tri-City was unable to continue taking patients because of the "critical disruption," so ambulances were re-routed to other facilities and pending operations and appointments were cancelled.[7]

### PARTIES

12.　　Plaintiff Pontius is a resident and citizen of Oceanside, California, where she intends to remain.

---

[6]　　Steve Adler, *Data Breaches Confirmed by Tri-City Healthcare District; TheraCom*, THE HIPAA JOURNAL (Oct. 16, 2024), https://www.hipaajournal.com/data-breach-tri-city-healthcare-district-theracom.

[7]　　Christina Bravo & Dave Summers, *Tri-City Healthcare Halts Emergency Operations After Ransomware Attack: Source*, NBC SAN DIEGO (Nov. 9, 2023), https://www.nbcsandiego.com/news/local/tri-city-healthcare-halts-emergency-operations-after-ransomware-attack-source/3351170.

CLASS ACTION COMPLAINT – Case No. _____

13.    Plaintiff is informed, believes, and based thereon alleges that Defendant Tri-City Healthcare District is a healthcare district formed and operating under California Health & Safety Code § 32000 as a local government entity within the County of San Diego, with a principal place of business located at 4002 Vista Way, Oceanside, California 92056.

14.    Defendant Tri-City Healthcare District was organized in 1957 under the terms and provisions of the Local Health Care District Law of the State of California set forth in Health & Safety Code § 32000 *et seq*.  Defendant is located in the cities of Carlsbad, Oceanside, and Vista and owns and operates the Tri-City Medical Center which serves the cities' residents and the surrounding region with a full-service, acute-care hospital with two advanced clinical institutes for cardiovascular and orthopedic care.  The center has almost 400 beds with more than 500 physicians servicing the center in 60 specialties.

## JURISDICTION AND VENUE

15.    The Court has general subject matter jurisdiction over this civil action under the Class Action Fairness Act, 28 U.S.C. § 1332(d) because the amount in controversy is easily more than $5,000,000 and minimal diversity exists.  Specifically, Defendant's Data Breach likely affected over 108,000 patients, all of whom may be entitled to the hundreds of dollars in damages under California law.  Thus, it is likely that the amount in controversy easily exceeds $5,000,000.

16.    This Court has personal jurisdiction over Defendant because its principal place of business is in this District.

17.    Venue is proper in this Court because Defendant is at home in this District.

4
CLASS ACTION COMPLAINT – Case No. _____

**ADDITIONAL FACTUAL ALLEGATIONS**

18.    The information held by Defendant in its computer systems at the time of the Data Breach included the unencrypted Private Information of Plaintiff and Class Members.

19.    Defendant made implicit promises and representations to Plaintiff and Class Members that their Private Information would be kept safe and confidential, and that the privacy of that information would be maintained.

20.    Plaintiff's and Class Members' Private Information was provided to Defendant with the reasonable expectation and on the mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

21.    Defendant had a duty to adopt reasonable measures to protect the Private Information of Plaintiff and Class Members from involuntary disclosure to third parties.  Defendant has a legal duty to keep consumer's Private Information safe and confidential.

22.    Defendant had obligations created by the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act"), HIPAA, state statutes (California Consumer Privacy Act ("CCPA"), California Confidentiality of Medical Information Act ("CMIA"), California Customer Records Act ("CCRA")), and industry standards.

23.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII, Defendant assumed legal and equitable duties and knew or should have known it was responsible for protecting Plaintiff's and Class Members' PII from disclosure.

**A.    Defendant's Data Breach Was Imminently Foreseeable**

24.    Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches targeting institutions that collect and store PII, like Defendant, preceding the date of the Data Breach.

5

25.    Data thieves regularly target institutions like Defendant due to the highly sensitive information in their custody.  Defendant knew and understood that unprotected PII is valuable and highly sought after by criminal parties who seek to illegally monetize that PII through unauthorized access.

26.    In 2021, a record of 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.[8]

27.    As a custodian of Private Information, Defendant knew, or should have known, the importance of safeguarding the Private Information entrusted to it by Plaintiff and Class Members, and of the foreseeable consequences if its data security systems were breached, including the significant costs imposed on Plaintiff and Class Members because of a breach.

28.    Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the Private Information of Plaintiff and Class Members from being compromised.

29.    Defendant was, or should have been, fully aware of the unique type and the significant volume of data in its systems, amounting to potentially thousands of individuals' detailed Private Information, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

30.    The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class Members.

31.    The ramifications of Defendant's failure to keep secure the Private Information of Plaintiff and Class Members are long lasting and severe.  Once

---

[8]    *See* Identity Theft Res. Ctr., *2021 Data Breach Annual Report*, at 6 (Jan. 2022), https://notified.idtheftcenter.org/s/.

CLASS ACTION COMPLAINT – Case No. _____

Private Information is stolen, fraudulent use of that information and damage to victims may continue for years.

**B. Value of Personally Identifiable Information and Protected Health Information**

32.    The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[9]  The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[10]

33.    The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web.  Numerous sources cite dark web pricing for stolen identity credentials.[11]

34.    For example, PII can be sold at a price ranging from $40 to $200.[12] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[13]

35.    Based on the foregoing, the information compromised in the Data Breach is even more significant because it includes Social Security numbers and

---

[9]    17 C.F.R. § 248.201 (2013).

[10]    *Id.*

[11]    Anita George, *Your Personal Data Is for Sale on the Dark Web.  Here's How Much It Costs,* DIGITAL TRENDS (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs.

[12]    Brian Stack, *Here's How Much Your Personal Information Is Selling for on the Dark Web*, EXPERIAN (Dec. 6, 2017), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web.

[13]    *In the Dark*, VPNOVERVIEW, 2019, https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark (last accessed Oct. 21, 2024).

CLASS ACTION COMPLAINT – Case No. _____

other government identification, which is significantly difficult if not impossible to change.

36.    This data demands a much higher price on the black market.  Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information . . . [is] worth more than 10x in price on the black market."[14]

37.    Medical information is also a high-value target for hackers.  Indeed, "hackers are selling the information for profit on the black market" because "buyers might use the information to create fake IDs to purchase medical equipment or drugs, or to file a false insurance claim."[15]

38.    Indeed, full medical records can sell for as much as ten times the cost of a Social Security number.[16]

39.    "Healthcare data can be used to impersonate patients to obtain expensive medical services, Medicare and Medicaid benefits, healthcare devices, and prescription medications.  Healthcare records also contain the necessary information to allow fraudulent tax returns to be filed to obtain rebates."[17]

40.    "In contrast to credit card numbers and other financial information, healthcare data has an incredibly long lifespan and can often be misused for long periods undetected.  Credit card companies monitor for fraud and rapidly block cards and accounts if suspicious activity is detected, but misuse of healthcare data

---

[14]    Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, (Feb. 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

[15]    *What Hackers Actually Do with Your Stolen Medical Records*, Advisory Board (Updated Mar. 20, 2023), https://www.advisory.com/daily-briefing/2019/03/01/hackers.

[16]    *Id.*

[17]    Steve Alder, *Editorial: Why Do Criminals Target Medical Records*, THE HIPAA JOURNAL (Nov. 2, 2023), https://www.hipaajournal.com/why-do-criminals-target-medical-records.

CLASS ACTION COMPLAINT – Case No. _____

is harder to identify and can be misused in many ways before any malicious activity is detected. During that time, criminals can run up huge debts – far more than is usually possible with stolen credit card information."[18]

41. The fraudulent activity resulting from the Data Breach may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[19]

## C. Defendant Failed to Comply with FTC Guidelines

42. The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the FTC Act, 15 U.S.C. § 45. *See, e.g.*, *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

43. In October 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the

---

[18] *Id.*

[19] U.S. Gov't Accountability Office, GAO-07-737, *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, at 29 (June 2007), https://www.gao.gov/assets/gao-07-737.pdf.

CLASS ACTION COMPLAINT – Case No. _____

personal consumer information they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

44.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

45.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

46.    As evidenced by the Data Breach, Defendant failed to properly implement basic data security practices and failed to audit, monitor, or ensure the integrity of its data security practices, or to appropriately prepare to face a data breach and respond to it in a timely manner. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act.

47.    Defendant was at all times fully aware of its obligation to protect the PII of consumers under the FTC Act yet failed to comply with such obligations.

CLASS ACTION COMPLAINT – Case No. _____

Defendant was also aware of the significant repercussions that would result from its failure to do so. Accordingly, Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

### D.  Defendant Failed to Comply with HIPAA

48.    HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information.[20]

49.    HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of Private Information is properly maintained.[21]

50.    The Data Breach itself resulted from a combination of inadequacies showing Defendant failed to comply with safeguards mandated by HIPAA. Defendant's security failures include, but are not limited to:

a.    Failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains, and transmits in violation of 45 C.F.R. § 164.306(a)(1);

b.    Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

---

[20]    HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, *inter alia*: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.

[21]    *See* 45 C.F.R. § 164.306 (security standards: general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

CLASS ACTION COMPLAINT – Case No. _____

c.      Failing to protect against any reasonably-anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d.      Failing to ensure compliance with HIPAA security standards by Defendant's workforce in violation of 45 C.F.R. § 164.306(a)(4);

e.      Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f.      Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g.      Failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h.      Failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i.      Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

51.    Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrated Defendant failed to comply with safeguards mandated by HIPAA regulations.

CLASS ACTION COMPLAINT – Case No. _____

### E.    Defendant Failed to Comply with Industry Standards

52.    Experts studying cybersecurity routinely identify institutions that store PII like Defendant as being particularly vulnerable to cyberattacks because of the value of the PII which they collect and maintain.

53.    Some industry best practices that should be implemented by institutions dealing with sensitive PII, like Defendant, include, but are not limited to: educating all employees; strong password requirements; multilayer security including firewalls, anti-virus, and anti-malware software; encryption; multi-factor authentication; backing up data; implementing reasonable systems to identify malicious activity; implementing reasonable governing policies; and limiting which employees can access sensitive data.  As evidenced by the Data Breach and its timeline, Defendant failed to follow some or all of these industry best practices.

54.    Other best cybersecurity practices that are standard at large institutions that store PII include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points.

55.    Moreover, a properly trained helpdesk that understands how to face social engineering attacks is an expected part of all cybersecurity programs.

56.    Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

CLASS ACTION COMPLAINT – Case No. _____

57.    Defendant failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

## F.    Common Injuries & Damages

58.    Because of Defendant's ineffective and inadequate data security practices, the Data Breach, and the foreseeable consequences of PII ending up in the possession of criminals, the risk of identity theft to the Plaintiff and Class Members has materialized and is imminent, and Plaintiff and Class Members have all sustained actual injuries and damages, including: (a) invasion of privacy; (b) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (c) the loss of benefit of the bargain (price premium damages); (d) diminution of value of their PII; (e) invasion of privacy; and (f) the continued risk to their PII, which remains in the possession of Defendant, and which is subject to further breaches, so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' PII.

## G.    The Data Breach Increases Victims' Risk of Identity Theft

59.    Plaintiff and Class Members are at a heightened risk of identity theft for years to come, especially because Defendant's failures resulted in Plaintiff's and Class Members' Social Security number falling into the hands of identity thieves.

60.    The unencrypted PII of Class Members has already or will end up for sale on the dark web because that is the *modus operandi* of hackers. Indeed, when these criminals do not post the data to the dark web, it is usually at least sold on private Telegram channels to even further identity thieves who purchase the PII for the express purpose of conducting financial fraud and identity theft operations.

61.    Further, the standard operating procedure for cybercriminals is to use some data, like the Social Security numbers here, to access "fullz packages" of that person to gain access to the full suite of additional PII that those

CLASS ACTION COMPLAINT – Case No. _____

cybercriminals have access through other means.  Using this technique, identity thieves piece together full pictures of victim's information to perpetrate even more types of attacks.[22]

62.    With "Fullz" packages, cybercriminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy to assemble complete dossiers on individuals.

63.    The development of "Fullz" packages means here that the stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff's and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers.  In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII that was exfiltrated in the Data Breach, criminals may still easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

## H.    Loss of Time to Mitigate Risk of Identity Theft and Fraud

64.    Because of the recognized risk of identity theft, when a data breach occurs, and an individual is notified by a company that their PII was compromised, as in this Data Breach, the reasonable person is expected to take

---

[22]    "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, Social Security number, date of birth, and more.  As a rule of thumb, the more information you have on a victim, the more money that can be made off those credentials.  Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web.  Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand.  Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge.  *See, e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen from Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), https://krebsonsecurity.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm.

CLASS ACTION COMPLAINT – Case No. _____

steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm and a defendant arguing that the individual failed to mitigate damages.

65. The need to spend time mitigating the risk of harm is especially important in cases like this where Plaintiff has already begun seeing the effects of Defendant's failures.

66. By spending this time, Plaintiff is not manufacturing her own harm, she is taking necessary steps at Defendant's direction because the Data Breach included her Social Security number.

67. Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions to remedy the harms they have or may experience because of the Data Breach, such as contacting credit bureaus to place freezes on their accounts; changing passwords and re-securing their own computer networks; and checking their financial accounts and health insurance statements for any indication of fraudulent activity, which may take years to detect.

68. These efforts are consistent with the U.S. Government Accountability Office that released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[23]

69. These efforts are also consistent with the steps that FTC recommends that data breach victims take to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (and considering an extended fraud alert that lasts for seven years if someone

---

[23] *See* U.S. Gov't Office, GAO-07-737, *supra* note 19 at 2.

CLASS ACTION COMPLAINT – Case No. _____

steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[24]

70.    Moreover, Defendant told Plaintiff and the Class Members to engage in mitigation tasks, "we recommend that you remain vigilant by reviewing your account statements and credit reports closely.  If you detect any suspicious activity on an account, you should promptly notify the financial institution or company with which the account is maintained."[25]

## I.    Diminution of Value of PII

71.    PII are valuable property rights.[26]    Their value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences.  Even this obvious risk-to-reward analysis illustrates beyond a doubt that PII has considerable market value.

72.    An active and robust legitimate marketplace for PII exists.  In 2019, the data brokering industry was worth roughly $200 billion.[27]

73.    In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to marketers or app developers.[28,29]

---

[24]    *See* Fed. Trade Comm'n, *Identity Theft.gov*, https://www.identitytheft.gov/ Steps.

[25]    Defendant's Sample Notice Letter, **Exhibit B**.

[26]    *See, e.g.*, Randall T. Soma, et al., Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets, 15 RICH. J.L. & TECH. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

[27]    David Lazarus, *Column: Shadowy Data Brokers Make the Most of Their Invisible Cloak*, LOS ANGELES TIMES (Nov. 5, 2019), https://www.latimes.com/ business/story/2019-11-05/column-data-brokers.

[28]    DataCoup, The Personal Data Revolution, https://datacoup.com (last accessed Oct. 21, 2024).

[29]    https://digi.me/what-is-digime/.

CLASS ACTION COMPLAINT – Case No. _____

74.     Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $50.00 a year.[30]

75.     Because of the Data Breach, Plaintiff's and Class Members' PII, which has an inherent market value in both legitimate and dark markets, has been damaged and diminished by its compromise and unauthorized release.  However, this transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss.  Moreover, the PII is now readily available, and the rarity of the data has been lost, thereby causing additional loss of value.

76.     At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiff and Class Members, and of the foreseeable consequences that would occur if its data security systems were breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members because of a breach.

77.     Defendant was, or should have been, fully aware of the unique type and the significant volume of data in its network, amounting to likely thousands of individuals' detailed personal information, upon information and belief, and thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

78.     The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII of Plaintiff and Class Members.

---

[30]     Nielsen Computer & Mobile Panel, *Frequently Asked Questions*, https://computermobilepanel. nielsen.com/ui/US/en/faqen.html (last accessed Oct. 21, 2024).

CLASS ACTION COMPLAINT – Case No. _____

### J. The Future Cost of Credit and Identity Theft Monitoring Is Reasonable and Necessary

79. Based on the value of the information stolen, the data either has or will be sold to cybercriminals whose mission it is to perpetrate identity theft and fraud. Even if the data is not posted online, these data are ordinarily sold and transferred through private Telegram channels wherein thousands of cybercriminals participate in a market for such data so that they can misuse it and earn money from financial fraud and identity theft of data breach victims.

80. Such fraud may go undetected for years; consequently, Plaintiff and Class Members are at a present and continuous risk of fraud and identity theft for many years into the future.

81. The retail cost of credit monitoring and identity theft monitoring can cost $200 or more per year per Class Member. This is a reasonable and necessary cost to monitor and protect Class Members from the risk of identity theft that arose from the Data Breach. This is a future cost for a minimum of seven years that Plaintiff and Class Members would not need to bear but for Defendant's failure to safeguard their PII.

### K. Plaintiff's Experience

82. Plaintiff provided her Private Information to Defendant as a condition of receiving medical services.

83. At the time of the Data Breach, Defendant retained Plaintiff's Private Information in its system.

84. Plaintiff's Private Information was compromised in the Data Breach and stolen by identity thieves who illegally accessed Defendant's network for the specific purpose of targeting the Private Information.

85. Plaintiff takes reasonable measures to protect her Private Information.

19

CLASS ACTION COMPLAINT – Case No. _____

86.     Because of the Data Breach, Plaintiff has suffered a loss of time and has spent and continues to spend a considerable amount of time on issues related to this Data Breach.  She has and will continue to monitor accounts and credit scores and have sustained emotional distress.  This is time that was lost and unproductive and took away from other activities and work duties.

87.     Plaintiff also suffered actual injury in the form of damages to and diminution in the value of her Private Information—a form of intangible property that she entrusted to Defendant for the purpose of obtaining medical services from Defendant, which was compromised in and because of the Data Breach.

88.     Plaintiff suffered lost time, interference, and inconvenience because of the Data Breach and has experienced stress and anxiety due to increased concerns for the loss of her privacy.

89.     Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of criminals whose mission it is to misuse that data, and has and will continue to be required to spend considerable time fighting off the substantially increased risk of identity theft and fraud.

90.     In addition to the significantly increased risk of identity theft and financial fraud that Plaintiff must now face because of Defendant's failures, and in additional to the significant invasion of her privacy, Plaintiff has already begun to see the effects of the Data Breach.

91.     For example, Ms. Pontius has had multiple fraudulent charges on her Credit Union card.  The fraudster attempted multiple $1 test charges, and then proceeded with larger charges as high as $700.  Plaintiff then had to work with her bank to reissue the card.

92.     Moreover, Plaintiff has fraudulent charges on her Visa card from someone on the East Coast and had to replace her card because of that fraud.

CLASS ACTION COMPLAINT – Case No. _____

93.    Replacing her cards also required Plaintiff to spend a significant amount of time and effort changing her payment information on numerous bill-pay websites.

94.    Next, Plaintiff also received a scam phone call from someone impersonating her bank. The fraudster attempted to convince Plaintiff to click on links in text messages to validate the account and sought information from Plaintiff that Plaintiff knew a true bank employee would already have. Thus, Plaintiff was not fooled by the fraudster, but she understands that this is exactly the type of fraudulent attempts that she must now face for years to come because of Defendant's failures.

95.    The substantial increase in risk of harm, coupled with the brazen privacy violation, has caused Plaintiff to suffer stress, anxiety, and worry over her financial future and her need to now be hyper-vigilant to protect herself and her family.

96.    Plaintiff pays and must now continue to pay for credit monitoring services. She pays $20 per month for Experian services.

97.    Plaintiff has since spent time freezing her credit to attempt to mitigate against the increased risk of fraud and identity theft that she now must face for years to come, though frozen credit means that she will have to pay to unfreeze her credit in the future to use it.

98.    Defendant obtained and continues to maintain Plaintiff's Private Information and has a continuing legal duty and obligation to protect that Private Information from unauthorized access and disclosure. Plaintiff's Private Information was compromised and disclosed because of the Data Breach.

## CLASS ALLEGATIONS

99.    Pursuant to the Federal Rules of Civil Procedure 23(b)(1), 23(b)(3), Plaintiff brings this action on behalf of herself and on behalf of all members of the proposed class defined as:

21

CLASS ACTION COMPLAINT – Case No. _____

1
2
3

All individuals residing in the United States whose Private Information was compromised in the Data Breach and to whom Defendant sent an individual notification that they were affected by the Data Breach ("Class").

4   100. Excluded from the Class are the following individuals and/or entities:
5   Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors,
6   and any entity in which Defendant has a controlling interest; all individuals who
7   make a timely election to be excluded from this proceeding using the correct
8   protocol for opting out; and all judges assigned to hear any aspect of this
9   litigation, as well as their immediate family members.

10  101. Plaintiff reserves the right to amend the definition of the proposed
11  Class or to add a subclass before the Court determines whether certification is
12  appropriate.

13  102. The proposed Class meets the criteria certification under Fed. R. Civ.
14  P. 23(a), (b)(1), (b)(2), and (b)(3).

15  103. Numerosity. The Class Members are so numerous that joinder of all
16  members is impracticable. Upon information and belief, Plaintiff believes the
17  proposed Class includes thousands of individuals who have been damaged by
18  Defendant's conduct as alleged herein. The precise number of Class Members is
19  unknown to Plaintiff but may be ascertained from Defendant's records.

20  104. Commonality. There are questions of law and fact common to the
21  Class which predominate over any questions affecting only individual Class
22  Members. These common questions of law and fact include, without limitation:

23          a.      Whether Defendant engaged in the conduct alleged herein;

24          b.      Whether Defendant's conduct violated the FTC Act;

25          c.      Whether Defendant's conduct violated HIPAA;

26          d.      Whether Defendant's conduct violated California privacy laws
27  for which it owes statutory damages;

28          e.      When Defendant learned of the Data Breach;

CLASS ACTION COMPLAINT – Case No. _____

f.      Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

g.      Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

h.      Whether Defendant's data security systems, prior to and during the Data Breach, were consistent with industry standards;

i.      Whether Defendant owed duties to Class Members to safeguard their Private Information;

j.      Whether Defendant breached its duties to Class Members to safeguard their Private Information;

k.      Whether hackers obtained Class Members' PII via the Data Breach;

l.      Whether Defendant had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members;

m.      Whether Defendant breached its duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members;

n.      Whether Defendant knew or should have known its data security systems and monitoring processes were deficient;

o.      What damages Plaintiff and Class Members suffered as a result of Defendant's misconduct;

p.      Whether Defendant's conduct was negligent;

q.      Whether Defendant breached contracts it had with its clients, which were made expressly for the benefit of Plaintiff and Class Members;

r.      Whether Plaintiff and Class Members are entitled to damages;

s.      Whether Plaintiff and Class Members are entitled to additional credit or identity monitoring and monetary relief; and

CLASS ACTION COMPLAINT – Case No. _____

t.    Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

105.  <u>Typicality</u>.  Plaintiff's claims are typical of those of other Class Members because Plaintiff's PII, like that of every other Class Member, was compromised in the Data Breach.  Plaintiff's claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through the common misconduct of Defendant.  Plaintiff is advancing the same claims and legal theories on behalf of herself and all other Class Members, and there are no defenses that are unique to Plaintiff.  The claims of Plaintiff and those of Class Members arise from the same operative facts and are based on the same legal theories.

106.  <u>Adequacy of Representation</u>.  Plaintiff will fairly and adequately represent and protect the interests of Class Members.  Plaintiff's counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

107.  <u>Predominance</u>.  Defendant has engaged in a common course of conduct toward Plaintiff and Class Members.  For example, all of Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed and exfiltrated in the same way.  The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues.  Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

108.  <u>Superiority</u>.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action.  Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation.  Absent a class action, most Class Members would

CLASS ACTION COMPLAINT – Case No. _____

likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

109. Class certification is also appropriate. Defendant has acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

110. Finally, all members of the proposed Class are readily ascertainable. Defendant has access to the names and addresses and/or email addresses of Class Members affected by the Data Breach.

## CLAIMS FOR RELIEF

### CLAIM I
### NEGLIGENCE AND NEGLIGENCE *PER SE*
#### (On Behalf of Plaintiff and the Class)

111. Plaintiff incorporates the above allegations as if fully set forth herein.

112. Plaintiff and Class Members provided their Private Information to Defendant as a condition of receiving medical services from Defendant.

113. Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class Members could and would suffer if the Private Information were wrongfully disclosed.

114. By assuming the responsibility to collect and store this data, Defendant had duties of care to use reasonable means to secure and to prevent disclosure of the information, and to safeguard the information from theft.

CLASS ACTION COMPLAINT – Case No. _____

115. Defendant had duties to employ reasonable security measures under Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

116. HIPAA part 164 provides specific cybersecurity measures that all covered entities, including Defendant, must comply with.

117. Defendant's duty to use reasonable security measures also arose under the common law, and as informed by the FTC Act and HIPAA, which mandate that Defendant implement reasonable cybersecurity measures.

118. Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the PII.

119. Moreover, Defendant had a duty to promptly and adequately notify Plaintiff and Class Members of the Data Breach.

120. Defendant had and continues to have duties to adequately disclose that the Private Information of Plaintiff and Class Members within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice is necessary to allow Plaintiff and Class Members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII by third parties.

121. Defendant breached its duties, pursuant to the FTC Act, HIPAA, and other applicable standards, and thus was negligent, by failing to use reasonable measures to protect Plaintiff and the proposed Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

CLASS ACTION COMPLAINT – Case No. _____

a.      Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and the proposed Class Members' Private Information;

b.      Failing to adequately monitor the security of its networks and systems, including by failing to implement reasonable monitoring, logging, and alerting systems such as EDR/XDR, data loss prevention tools, and a centralized security event management system;

c.      Allowing unauthorized access to Plaintiff's and the proposed Class Members' Private Information;

d.      Failing to detect in a timely manner that Plaintiff's and the proposed Class Members' Private Information had been compromised;

e.      Failing to remove Plaintiff's and the proposed Class Members' Private Information when it was no longer required to retain pursuant to regulations; and

f.      Failing to implement a reasonable cybersecurity incident response plan that would have enabled Defendant to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so they could take appropriate steps to mitigate the potential for identity theft and other damages.

122.    Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the proposed Class Members.

123.    Defendant's violation of the FTC Act and HIPAA's regulations also constitute negligence *per se*, as those provisions are designed to protect individuals like Plaintiff and the proposed Class Members from the harms associated with data breaches.

CLASS ACTION COMPLAINT – Case No. _____

124.    Defendant has admitted that the Private Information of Plaintiff and the proposed Class Members was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

125.    But for Defendant's wrongful and negligent breaches of duties owed to Plaintiff and the proposed Class Members, the Private Information of Plaintiff and the proposed Class Members would not have been compromised.

126.    There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and the proposed Class Members and the harm, or risk of imminent harm, suffered by Plaintiff and the proposed Class Members.  The Private Information of Plaintiff and the proposed Class Members was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

127.    As a direct and proximate result of Defendant's conduct, Plaintiff and the proposed Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) experiencing an increase in spam calls, texts, and/or emails; (viii) statutory damages; (ix) nominal damages; and (x) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

CLASS ACTION COMPLAINT – Case No. _____

128.   As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the proposed Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

129.   Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the proposed Class Members have suffered and will suffer the continued risks of exposure of their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

130.   Plaintiff and the proposed Class Members are therefore entitled to damages, including restitution and unjust enrichment, declaratory and injunctive relief, and attorneys' fees, costs, and expenses.

131.   Given Defendant's failures to implement the proper systems, as defined above, even knowing the ubiquity of the threat of data breaches, Defendant's decision not to invest enough resources in its cyber defenses amounts to gross negligence.

### CLAIM II
### BREACH OF IMPLIED CONTRACT
#### (On Behalf of Plaintiff and the Proposed Class)

132.   Plaintiff incorporates the above allegations as if fully set forth herein.

133.   Plaintiff and the proposed Class Members transferred their Private Information to Defendant as part of the agreement to use Defendant's medical services.

134.   Plaintiff and the proposed Class Members conferred a monetary benefit on Defendant.  Specifically, they provided Defendant with their Private Information.  In exchange, Defendant should have provided adequate data security for Plaintiff and the proposed Class Members and implicitly agreed to do so.

29

CLASS ACTION COMPLAINT – Case No. _____

135.   Indeed, Defendant held itself out as a company dedicated to protecting the privacy of Plaintiff's and the proposed Class Members' Private Information.

136.   Defendant knew that Plaintiff and the proposed Class Members conferred a benefit on it in the form their PII as a necessary part of receiving medical services.

137.   Defendant, however, failed to secure Plaintiff and the proposed Class Members' Private Information and, therefore, did not provide adequate data security in return for the benefit Plaintiff and the proposed Class Members provided.

138.   If Plaintiff and the proposed Class Members knew that Defendant had not reasonably secured their Private Information, they would not have allowed it to be provided to Defendant.

139.   As a direct and proximate result of Defendant's conduct, Plaintiff and the proposed Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) experiencing an increase in spam calls, texts, and/or emails; (viii) statutory damages; (ix) nominal damages; and (x) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

CLASS ACTION COMPLAINT – Case No. _____

**CLAIM III**
**BREACH OF BAILMENT**
**(On Behalf of Plaintiff and the Proposed Class)**

140. Plaintiff incorporates the above allegations as if fully set forth herein.

141. Plaintiff conveyed her Private Information to Defendant lawfully as a condition of receiving medical services with the understanding that Defendant would return or delete her Private Information when it was no longer required.

142. Defendant accepted this Private Information on the implied understanding that Defendant would honor its obligations under federal regulations, state law, and industry standards to safeguard Plaintiff's Private Information and act on the Private Information only within the confines of the purposes for which Defendant collected Plaintiff's Private Information.

143. By accepting Plaintiff's data and storing it on its systems, Defendant had exclusive control over the privacy of Plaintiff's data in that Plaintiff had no control over whether Defendant's copy of Plaintiff's Private Information was protected with sufficient safeguards and indeed only Defendant had that control.

144. By failing to implement reasonable cybersecurity safeguards, as detailed above, Defendant breached this bailment agreement causing harm to Plaintiff in the form of violations of her right to privacy and to self-determination of who had/has access to her Private Information, in the form of requiring her to spend her own valuable time responding to Defendant's failures, and in the form of forcing Plaintiff and the proposed Class Members to face years of substantially increased risk of identity theft and financial fraud.

**CLAIM IV**
**VIOLATIONS OF THE CALIFORNIA CONFIDENTIALITY OF MEDICAL INFORMATION ACT**
**Cal. Civ. Code § 56, *et seq.***
**(On Behalf of Plaintiff and the Proposed Class)**

145. Plaintiff incorporates the above allegations as if fully set forth herein.

146. Defendant is a "provider of health care" as defined in Cal. Civ. Code § 56.06.

31

147.   Plaintiffs and the proposed Class Members are "patients" within the meaning of Cal. Civ. Code § 56.05(l).

148.   Defendant maintained, preserved, and stored Plaintiff's and the proposed Class Members' medical information on its information systems.  As a healthcare provider, Defendant maintains information regarding Plaintiffs' and the proposed Class Members' medical histories, physical conditions, or treatment, including treatment and appointment details, claims information, and designated health services categories.  Defendant confirmed that the Data Breach exposed medical information, including PHI and health information.

149.   Defendant violated Cal. Civ. Code § 56.101 by failing to maintain and preserve the confidentiality of Plaintiff's and the proposed Class Members' medical information.

150.   In violation of Cal. Civ. Code § 56.101(a), Defendant negligently maintained, preserved, and stored Plaintiff's and the proposed Class Members' medical information in a manner that failed to preserve the security of that information and breached its confidentiality.  As a result, Plaintiffs' and the proposed Class Members' confidential information and records were negligently released to hackers in the Data Breach.

151.   Medical information that was the subject of the Data Breach included "electronic medical records" or "electronic health records" as defined by Cal. Civ. Code § 56.101(c).

152.   Unauthorized individuals viewed medical information taken in the Data Breach, as evidenced by the fact that the personal information was exfiltrated by ransomware hackers.  By being used in this matter, the information was necessarily viewed.

153.   In violation of Cal. Civ. Code § 56.101(b)(1)(A), Defendant's electronic health record systems or electronic medical record systems failed to protect and preserve the integrity of electronic medical information.

CLASS ACTION COMPLAINT – Case No. _____

154.   Defendant also violated Cal. Civ. Code § 56.36(b) by negligently releasing Plaintiff's and the proposed Class Members' confidential information in the Data Breach.

155.   Defendant's wrongful conduct, actions, inaction, omissions, and want of ordinary care violate the CMIA and directly and proximately caused the Data Breach.  Plaintiffs and the proposed Class Members consequently have suffered (and will continue to suffer) economic damages and other injuries and actual harm including, without limitation: (1) the compromise and theft of their medical information; (2) loss of the opportunity to control how their medical information is used; (3) diminution in the value and use of their medical information entrusted to Defendant with the understanding that Defendant would safeguard it against theft and not allow it to be accessed and misused by third parties; (4) out-of-pocket costs associated with the prevention and detection of, and recovery from, identity theft and misuse of their medical information; (5) continued undue risk to their medical information; and (6) future costs in the form of time, effort, and money they will expend to prevent, detect, contest, and repair the adverse effects of their medical information being stolen in the Data Breach.

156.   Plaintiff and the proposed Class Members were injured and have suffered damages, as described above, from Defendant's negligent release of their medical information in violation of Cal. Civ. Code §§ 56.36, and 56.101, and accordingly are entitled to relief under Cal. Civ. Code § 56.36, including actual damages, nominal statutory damages of $1,000, injunctive relief, and attorney fees, expenses, and costs.

### CLAIM V
### VIOLATIONS OF THE CALIFORNIA CUSTOMER RECORDS ACT
### Cal. Civ. Code § 1798.80
### (On Behalf of Plaintiff and the Proposed Class)

157.   Plaintiff incorporates the above allegations as if fully set forth herein.

33

158.    Plaintiff and the proposed Class Members are "customers" within the meaning of Cal. Civ. Code § 1798.80(c), as they provided personal information to Defendant for the purpose of obtaining services.

159.    Defendant is a "business" within the meaning of Cal. Civ. Code § 1798.80(a).

160.    The CCRA provides that:

> A person or business that conducts business in California, and that owns or licenses computerized data that includes personal information, shall disclose a breach of the security of the system following discovery or notification of the breach in the security of the data to a resident of California . . . whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person . . . *in the most expedient time possible and without unreasonable delay*[.]

Cal. Civ. Code § 1798.82 (emphasis added).

161.    The Data Breach was a breach of security within the meaning of Cal. Civ. Code § 1798.82.  Private Information stolen in the Data Breach, as listed above, which constitutes "personal information" within the meaning of Cal. Civ. Code § 1798.80(e).

162.    In violation of the CCRA, Defendant unreasonably delayed in notifying Plaintiff and the proposed Class Members.  Defendant was aware of the Data Breach on November 9, 2023, but did not notify Plaintiff and the proposed Class Members until October 2024.  There were no legitimate law enforcement needs justifying these delays.  Nor were the delays necessary to determine the scope of the Breach and restore the reasonable integrity of Defendant's electronic data systems. Even if some delay was justified, a ten month delay was not.

163.    Timely disclosure was necessary so that Plaintiff and the proposed Class Members could, among other things: (1) purchase identity protection, monitoring, and recovery services; (2) flag asset, credit, and tax accounts for fraud, including by reporting the theft of their Social Security numbers to financial institutions, credit agencies, and the IRS; (3) purchase or otherwise obtain credit

34

CLASS ACTION COMPLAINT – Case No. _____

reports; (4) place or renew fraud alerts on a quarterly basis; (5) intensively monitor loan data and public records; and (6) take other steps to protect themselves and attempt to avoid or recover from identity theft.

164.    Because of Defendant's unreasonable delay of at least ten months in notifying Plaintiffs and the proposed Class Members of the Data Breach, Plaintiffs and the proposed Class Members were deprived of an opportunity to take timely and appropriate self-protective measures, such as requesting a credit freeze.  In addition, as a result of the delay, Plaintiffs and the proposed Class Members have suffered (and will continue to suffer) economic damages and other injuries and actual harm including, without limitation: (1) the compromise and theft of their personal information; (2) loss of the opportunity to control how their personal information is used; (3) diminution in the value and use of their personal information entrusted to Defendant with the understanding that Defendant would safeguard it against theft and not allow it to be accessed and misused by third parties; (4) out-of-pocket costs associated with the prevention and detection of, and recovery from, identity theft and misuse of their personal information; (5) continued undue risk to their personal information; and (6) future costs in the form of time, effort, and money they will expend to prevent, detect, contest, and repair the adverse effects of their personal information being stolen in the Data Breach.

165.    Therefore, on behalf of the Class, Plaintiffs seek actual damages under Cal. Civ. Code § 1798.84(b), injunctive and declaratory relief, and any other relief deemed appropriate by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE**,** Plaintiff, on behalf of herself and all Class Members, requests judgment against Defendant and that the Court grant the following:

A.    For an Order certifying this action as a class action and appointing Plaintiff and her counsel to represent the Class, pursuant to Fed. R. Civ. P. 23;

B.    For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and the proposed Class Members' Private Information, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and the proposed Class Members;

C.    For injunctive relief requested by Plaintiff, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the proposed Class Members, including but not limited to an order:

i.    prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii.    requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

iii.    requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiff and the proposed Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and the proposed Class Members;

iv.    requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII of Plaintiff and the proposed Class Members;

v.    prohibiting Defendant from maintaining the Private Information of Plaintiff and the proposed Class Members on a cloud-based database;

vi.    requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to

36

CLASS ACTION COMPLAINT – Case No. _____

conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii.    requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.    requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures; requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

ix.    requiring Defendant to conduct regular database scanning and securing checks;

x.    requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and the proposed Class Members;

xi.    requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xii.    requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

CLASS ACTION COMPLAINT – Case No. _____

xiii.    requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xiv.    requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and

xv.    for a period of seven years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the Class, and to report any deficiencies with compliance of the Court's final judgment;

D.    For an award of actual damages, compensatory damages, and nominal damages, in an amount to be determined, and for punitive damages, as allowable by law;

E.    For an award of attorneys' fees and costs, and any other expenses, including expert witness fees;

F.    Pre- and post-judgment interest on any amounts awarded; and

G.    Such other and further relief as this court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 22, 2024          Respectfully submitted,


*/s/ Christopher M. Burke*
Christopher M. Burke (CA Bar No. 214799)
Walter W. Noss (CA Bar No. 277580)
Yifan (Kate) Lv (CA Bar No. 302704)
**KOREIN TILLERY P.C.**
401 West A Street, Suite 1430

CLASS ACTION COMPLAINT – Case No. _____

1
2
3

San Diego, CA 92101
Telephone: (619) 625-5620
cburke@koreintillery.com
wnoss@koreintillery.com
klv@koreintillery.com

4

J. Gerard Stranch, IV (TN BPR # 23045)
*Pro Hac Vice Forthcoming*
Grayson Wells (TN BPR # 039658)
*Pro Hac Vice Forthcoming*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
gstranch@stranchlaw.com
gwells@stranchlaw.com

5
6
7
8
9

*Counsel for Plaintiff and the Proposed Class*

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT – Case No. _____